IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| HENRY WRIGHT, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:13-CV-4185-C-DGK-SSA |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This action seeks judicial review of the Commissioner of Social Security's (the "Commissioner") decision denying Plaintiff Henry Wright, Jr.'s applications for Social Security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ")[1] found Plaintiff had multiple severe impairments, including anxiety disorder and schizoaffective[2] disorder, but he retained the residual functional capacity ("RFC") to perform work as a small parts assembler, an electrical accessories assembler, and a housekeeper. Plaintiff challenges this determination.

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Court AFFIRMS the Commissioner's decision denying benefits.

### Factual and Procedural Background

A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

---

[1] The term ALJ refers solely to Kevin R. Martin, the administrative law judge who conducted the second hearing.

[2] Schizoaffective is defined as "[h]aving an admixture of symptoms suggestive of both schizophrenia and affective (mood) disorder." *PDR Medical Dictionary* 1578 (1st ed. 1995).

Plaintiff filed his applications on September 13, 2007, alleging a disability onset date of March 31, 2004. The Commissioner denied his applications, an administrative law judge subsequently affirmed the denial, and the Appeals Council denied review. Plaintiff appealed to the district court, and on May 23, 2011 it reversed and remanded the case pursuant to sentence four of 42 U.S.C. § 405(g), directing the ALJ to further evaluate Plaintiff's RFC and to obtain testimony from a vocational expert concerning whether he could perform work given his RFC.

On May 9, 2012, the ALJ conducted a hearing, and issued a decision affirming the denial of benefits on June 27, 2012. Plaintiff sought review from the Appeals Council. After considering further evidence from Plaintiff's treating psychiatrist Dr. Sosunmolu Shoyinka, M.D. ("Dr. Shoyinka"), the Appeals Council denied review, leaving the ALJ's determination as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. §§ 405(g), 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the

court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

**Analysis**

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[3]

Plaintiff posits two related RFC arguments. First, he contends the ALJ erred in formulating his RFC by improperly weighing the opinion evidence. Second, he argues that when the court reweighs the evidence before the ALJ with the new evidence presented for the first time to the Appeals Council, the ALJ's RFC formulation is unsupported by the record evidence. Each argument lacks merit.

**A. The ALJ did not err in weighing the opinion evidence.**

Plaintiff first asserts that the ALJ erred in weighing the opinion evidence about his mental impairments and limitations. In particular, Plaintiff argues that the ALJ erroneously discounted the opinions of his treating psychiatrists and psychologists Dr. Kristin Parkinson, M.D. ("Dr. Parkinson"), Dr. Danielle Bradhsaw, D.O. ("Dr. Bradshaw"), and Dr. Shoyinka. According to Plaintiff, the ALJ compounded this misstep by elevating the opinions of non-examining

---

[3] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); see 20 C.F.R. §§ 404.1520(a)–(g); 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

3

psychiatrist Dr. Glen Frisch, M.D. ("Dr. Frisch") and non-examining psychologist Dr. Richard Kaspar, Ph.D. ("Dr. Kaspar") over the opinions from the treating sources.

The opinions from Plaintiff's treating sources consisted of the following. Dr. Parkinson, who treated Plaintiff for his mental impairments over several years, wrote three letters, which all essentially stated Plaintiff's "persistent racing thoughts" rendered him disabled. R. at 470, 473-74. In March 2012, Dr. Bradshaw and Dr. Shoyinka jointly completed a mental residual functional capacity form in which they found Plaintiff's mental impairments precluded him from performing the following functions for 10% of an eight-hour workday: (1) understanding and remembering very short and simple instructions; and (2) performing activities within a schedule, maintaining regular attendance, and being punctual and within customary tolerances. R. at 868. Drs. Bradshaw and Shoyinka also found that Plaintiff's mental impairments precluded him from performing the following functions for 15% of an eight-hour workday: (1) remembering locations and work-like procedures; (2) maintaining attention and concentration for extended periods; (3) sustaining an ordinary routine without special supervision; (4) working in coordination with or in proximity to others without being distracted; (5) completing a normal workday and workweek without interruptions from psychologically-based symptoms and without an unreasonable number and length of rest periods; (6) interacting appropriately with the general public; (7) accepting instructions and responding appropriately to criticism from supervisors; (8) getting along with coworkers and peers; and (9) maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness. R. 868-69.

Drs. Frisch and Kaspar found Plaintiff less limited. In 2007, after reviewing Plaintiff's medical records, Dr. Frisch found Plaintiff retained the ability to: understand, remember, and carry out simple work instructions; maintain adequate attendance and sustain an ordinary routine without special supervision; interact adequately with peers and supervisors in a work setting that

4

has limited demands for social interaction; and adapt to minor changes in a simple, low-demand work setting. R. at 301. In 2009, after reviewing Dr. Frisch's opinion and the remainder of the medical evidence, Dr. Kaspar agreed with Dr. Frisch's findings. R. at 367.

Where, as here, the record contains differing medical opinions, it is the ALJ's responsibility to resolve conflicts among them. *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). The ALJ must assign controlling weight to a treating physician's opinion if that opinion is well-supported and consistent with other evidence in the record. 20 C.F.R § 404.1527(c)(2). An ALJ, however, cannot give controlling weight to the doctor's opinion if it is not supported by medically acceptable laboratory and diagnostic techniques, or if the opinion is inconsistent with the other substantial evidence of record. *Id.*; *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010). "[A]n ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (internal quotation marks omitted).

If an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so. *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002). Once the ALJ has decided how much weight to give a medical opinion, the court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence. *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010).

As for Dr. Parkinson's opinion, the ALJ gave several good and well-supported reasons for rejecting it. First, and most importantly, Dr. Parkinson's opinion that Plaintiff was "disabled" is a determination reserved solely for the Commissioner. *See House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination."). Thus, the ALJ properly rejected this portion of her opinion.

5

The ALJ also rightly discounted the remainder of her opinion because it was inconsistent with her treatment notes. Despite Dr. Parkinson's opinion that "racing thoughts" continually plagued Plaintiff, R. at 470, 473-74, only one treatment note mentioned them. R. at 467. One would expect if this condition were as disabling as Dr. Parkinson claimed, her notes would contain more discussion of, and treatment for, his "racing thoughts." On the contrary, Dr. Parkinson's treatment notes show that Plaintiff's mental impairments gradually improved with medication. R. at 458, 460-61, 469, 872-73. Indeed, during Plaintiff's most recent visits, Dr. Parkinson observed that Plaintiff was well enough to complete community service, live alone, and demonstrate an interest in finding a job. R. at 872. Plaintiff also remarked that he was "doing well," which in turn spurred Dr. Parkinson to recommend that he "get out more." R. at 873. Given these inconsistencies, the ALJ did not err in discounting Dr. Parkinson's opinions.

The ALJ also properly discounted the dual opinion from Drs. Bradshaw and Shoyinka. As the ALJ noted, their March 2012 opinion consisted of nothing more than several checked boxes with no narrative discussion or citation to treatment notes. Opinions in this form are of limited probative value. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (affirming an ALJ's rejection of an opinion because it was conclusory and in a checklist format). Of even more significance, their treatment notes fail to support the limitations assessed in their opinion. During all visits, they found Plaintiff exhibited a happy mood, normal affect, fair insight and judgment, and normal memory and intellect. R. at 887-891. The only limitation consistently noted by Drs. Bradshaw and Shoyinka was Plaintiff's limited ability to concentrate due to auditory hallucinations. R. at 886-890. Plaintiff's inability to concentrate fully, however, improved as the Drs. Bradshaw and Shoyinka increased his medication. R. at 888. And although in the most recent treatment notes Plaintiff reported that he still heard voices one time per week, he stated that the voices did not "bother him." R. at 890. Indeed, he even remarked

that completing tasks such as cleaning the house caused the voices to dissipate. R. at 890. For these well-supported reasons, the ALJ properly discounted their opinion.

Finally, the ALJ did not err in relying upon the opinions of Drs. Frisch and Kaspar. Dr. Frisch, unlike Drs. Bradshaw and Shoyinka, provided a brief a narrative of the evidence supporting his opinion. R. at 312. More importantly, Drs. Frisch's and Kaspar's opinions are more consistent with the treatment notes in the record—including the treatment notes authored after they completed their opinions—indicating Plaintiff was not as limited as he and his treating sources claimed. R. at 289-469, 829-892.[4] Because these opinions enjoyed more support from the medical evidence, the ALJ did not err in elevating them over the discredited opinions of Drs. Parkinson, Bradshaw, and Shoyinka.

On the whole, the ALJ properly relied upon the opinion evidence, medical records, and Plaintiff's discounted credibility in formulating his RFC. Since substantial evidence supports the ALJ's RFC findings, the Court will not disturb them.

### B. Even considering Dr. Shoyinka's testimonial opinion, substantial evidence supports the ALJ's RFC determination.

Plaintiff next asserts that when the Court reweighs the record evidence in light of Dr. Shoyinka's August 2012 testimony, it is clear that the ALJ's opinion is no longer supported by substantial evidence. The Court disagrees.

On August 21, 2012, less than two months after the ALJ's unfavorable decision, Plaintiff's counsel telephonically deposed Dr. Shoyinka. The majority of the deposition focused upon explaining Dr. Shoyinka's conclusory mental residual functional capacity form. R. at 523-32. Before providing this explanation, however, Dr. Shoyinka also tried to bolster Dr.

---

[4] Plaintiff contends that these opinions deserve less weight because they were rendered without the benefit of the most recent treatment notes. In making this argument, however, Plaintiff fails to direct the Court to any treatment notes that suggest Plaintiff's condition *worsened* after Dr. Kaspar's opinion in 2009. If anything, the treatment notes from 2009 until 2012 demonstrate that Plaintiff's condition *improved* with the aid of medication, thus arguably supporting a *less* restrictive RFC than Dr. Kaspar prescribed. *See* R. at 826-92.

Parkinson's opinion by stating that "racing thoughts" are common for individuals, like Plaintiff, who suffer from schizoaffective disorder. R. at 526-27. Dr. Shoyinka then expounded upon several findings from his opinion. He remarked that Plaintiff's auditory hallucinations impeded his ability to concentrate and would cause him to distract other co-workers. R. at 529-30. He also stated that Plaintiff's mood swings and dulled cognitive functioning impeded his ability to work with others. R.at 530-31.

Where, as here, a claimant presents, and the Appeals Council considers, new evidence related to the claimant's condition during the alleged period of disability, the Court must reweigh the record evidence in light of the new submissions. *Cunningham v. Apfel*, 222 F.3d 496, 502 (8th Cir. 2000). However, the Court may set aside the ALJ's decision only if the new, material evidence would change the ultimate outcome. *See Perks v. Astrue*, 687 F.3d 1086, 1093 (8th Cir. 2012).

Even with the additional explanation from Dr. Shoyinka, substantial evidence still supports the ALJ's RFC formulation. Dr. Shoyinka's opinion redresses only one of the deficiencies in his and Dr. Parkinson's opinions: their conclusory nature. This, however, was neither the only, nor even the primary reason, that the ALJ ultimately rejected their opinions. Rather, the fatal flaw in these opinions is their lack of support from treatment notes. And Dr. Shoyinka's testimony does not resolve this problem.

With respect to Dr. Parkinson's opinion, there still exists an inconsistency between her treatment notes and conclusion. The same infirmity remains with Dr. Shoyinka's opinion. Although he further explained that Plaintiff's hallucinations would significantly impede his ability to perform work, this does not alter the fact that Dr. Shoyinka's treatment notes undermine this conclusion. As discussed previously, in his final treatment note in the record, Dr. Shoyinka documented that Plaintiff was doing well, the voices had dissipated, and most

8

significantly, the voices did not "bother him."  R. at 890.  This observation directly conflicts with Dr. Shoyinka's deposition testimony that Plaintiff's auditory hallucinations made it nearly impossible for him to concentrate.  R. at 529.  Moreover, the remainder of his testimony cannot compensate for the lack of other objective findings in his treatment notes supporting such sweeping limitations.  R. at 886-892.  Thus, despite Dr. Shoyinka's post-decision testimony, the ALJ's RFC formulation is still supported by substantial evidence.

## Conclusion

Since substantial evidence on the record as a whole supports the ALJ's decision, the Court AFFIRMS the Commissioner's denial of benefits.

**IT IS SO ORDERED.**

Date:  October 3, 2014              /s/ Greg Kays
                                              GREG KAYS, CHIEF JUDGE
                                              UNITED STATES DISTRICT COURT